OPINION OF THE COURT
Peter M. Leavitt, J.
Since 1912, petitioner has leased a narrow, two-acre strip of land owned by Westchester County, adjacent to the northbound lanes of the Bronx River Parkway in the Village of Scarsdale, for use as a public tennis club. Because the property has alleg *866 edly been continuously “held for a public use”, as defined in section 406 (1) of the Real Property Tax Law, it has enjoyed tax-exempt status for more than 80 years. On June 4,1997, respondent, Office of the Assessor for the Village of Scarsdale (hereafter Assessor), notified petitioner that its tax-exempt status had been removed and the property had been placed on the tax rolls. The assessment was set at $15,750. Petitioner challenged this assessment by filing a complaint with respondent, Board of Assessment Review (hereafter the Board), and by petitioning it to reinstate the property’s tax-exempt status. Instead, the Board simply reduced the assessment from $15,750 to $6,900, stating that petitioner had presented “adequate proof * * * for partial reduction”. In this special proceeding, petitioner seeks a declaration that the removal of the tax-exempt status by the Assessor was unlawful, arbitrary and capricious. In addition, petitioner asks that the Board’s assessment be vacated and set aside, and that the tax-exempt status be reinstated.
Respondents contend that the tax-exempt status was removed because the property was not being held for “public use”. “Public use” has been defined by the courts as “ ‘property [that] should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public, or by public agencies.’ ” (Town of Harrison v County of Westchester, 13 NY2d 258, 263 [1963].) Respondents argue that the following facts are indicia that the club is more private than public: petitioner itself, and not the county, exercises control over its operations; the Board of Governors has the power to maintain and improve the facilities, and to amend the by-laws; the relatively secluded location and small sign; and the lack of advertising outside the Scarsdale area.
Petitioner argues that it has done nothing which warrants the removal of its tax-exempt status and that respondents have failed to show that the property is not held for public use. According to petitioner, respondents’ claims are simply “unfounded and inaccurate assumptions about the nature of the club’s operations.” (Petitioner’s reply mem of law, at 4.) In its papers, petitioner forcefully and convincingly addresses each of respondents’ purported indicia that the club is operating privately. For example, while respondents point to the unusually small sign at the entrance to the club as an indication of the club’s private nature, petitioner points out that the real reason for the diminutive sign lies in the fact that its lease *867 with the county requires county approval of such details as signage. Thus, according to petitioner, the very fact that county approval is required for something so relatively insignificant demonstrates that it has nowhere near as much control over its own operations as respondents claim and, therefore, it cannot be considered private in nature.
However, the petition must nevertheless be denied for the simple reason that petitioner’s membership limit of 225 effectively renders the property not held for a public use. According to petitioner’s by-laws, only members, and their guests, are allowed to play tennis on the club’s courts. To become a member, however, requires more than simply being a resident of Westchester County, as petitioner contends. Since the limited membership spots are granted on a “first-come, first-served” basis, a Westchester resident who wishes to be a member must be fortunate enough to have applied for membership during a period when a vacancy on the membership roll exists. If his application is denied because no such vacancy exists, he must continue to wait until one does. Despite the fact that the individual has met all of the requirements for membership — i.e., Westchester County residency — the limit imposed by petitioner prevents him from becoming a member. Thus, although the instant case lacks the selectivity in membership that petitioner claims is the “essence of a private club”, the property is nevertheless not being held for a public use because it is not being enjoyed by the public at large, but only by the first 225 people who have been granted membership.
Even if, as petitioner contends, the club does have some “optimal size”, this does not justify a limitation on the number of memberships. Petitioner’s “optimal size” is self-enforcing: i.e., if the club can only accommodate a certain number of players at once, then it is reasonable to assume that only that specific number of players will ever attempt to play at once. Thus, there is no need to artificially restrict the number of memberships to conform to this “optimal size”.
In short, there is no reason why the club cannot be run like any other public sports facility: i.e., “first-come, first-served”. If the “optimal size” is, for example, 50 people at a time, then the first 50 people who show up on any given day would get the first use of the courts; everyone who arrives afterwards must simply wait his or her turn. Each person would have an equal opportunity to play, limited only by how early or late he or she arrives. However, restricting the number of people who may ever play simply because the facility cannot accommodate any *868 more than that at one time — which is, in effect, what petitioner has done here — is the very antithesis of a “public use”.
Moreover, it is apparent from the record that petitioner’s membership list is quite elastic when considered in conjunction with its membership renewal policy for the children of members. According to the by-laws, family members, which consist of two adults and all children of the family, comprise two spots on the membership list. Children who are part of a family membership may, when they reach the age of 22, become intermediate members in their own right simply by writing the Board of Governors. Apparently then, the membership limit is automatically increased each time a member’s child reaches 22 and elects to become an intermediate member. All other applicants who are not children of members are still subject to the 225-person limit. Theoretically, if all 225 memberships had been granted, and both a new applicant and a 22-year-old child of a member were both being considered for membership at the same time, the new applicant would be rejected because the membership limit had been reached. However, not only would the member’s child be granted membership simply because his parents are members, but the actual membership limit would necessarily increase by one to accommodate the child. Clearly, this sort of favoritism and preferential treatment has no place where property is purportedly held for a public use.
Indeed, petitioner’s entire membership renewal policy smacks of a nonpublic use. If a member can continually renew his membership — and nothing in the record indicates the contrary — then it is theoretically possible that no membership vacancies will ever open up. A similar situation was considered in Matter of Chemung County v Hartman (24 AD2d 1063 [3d Dept 1965]), where a county-owned portion of an airport was leased to a corporation, which then subleased six airplane hangars to private tenants on a “first-come, first-served” basis. The Court found this use to be nonpublic because, except for some incidental emergency use of the hangars, the tenants could store planes in the hangars for as long as they wished. (Supra.) The Chemung decision is particularly persuasive becausé of its factual similarity to the instant proceeding. In both cases, while “first-come, first-served” policies were always in effect, the combination of a membership limit plus a renewal policy had the consequence of rendering each parcel of property nonpublic. Thus, neither the airplane hangars in Chemung nor the tennis club in the instant case qualify for tax-exempt status and, consequently, respondents’ determinations revok *869 ing said status were neither arbitrary and capricious nor otherwise unlawful.
Accordingly, for all of the foregoing reasons, the petition is hereby denied.